## THRASH *vs.* HARDY.

The 5th and 6th items of Testator's Will are: '5th, "I give to my son-in-law, John Thrash, the sum of five dollars, and *no more*, of my estate, both real and personal, for his full share." 6th. "I Will that my beloved daughter, Mary B. Thrash, that she shall keep the negroes she has now in her possession, *for her only use*, and for the use of the lawful heirs of her body during life." *Held*, That whatever interest the wife did take in the negroes under these clauses, was to her separate use, and to the exclusion of the husband, and that she was entitled, in an action of Trover, to recover against one holding the property (vested by the Will) under the husband, to the extent of that interest."

Trover, in Troup Superior Court. Decision by Judge BULL, at the May Term, 1860.

This was an action brought by Mary B. Thrash, against James Hardy, to recover damages for an alleged conversion of a negro man slave by the name of Sam, of black complexion, and about thirty years old.

Upon the trial in the Court below, it appeared from the evidence, that Mary B. Thrash was the daughter of Peter Strozier, and intermarried with John Thrash in the year 1823 or 1824; that upon such intermarriage the said Peter Strozier delivered to the said Thrash and his wife several negroes, to wit: Sam and Olivia, or Olly, and her children, to keep until he, the said Strozier, should otherwise dispose of them; and that the delivery of the negroes was only a loan, the title being retained by said Strozier; that the negroes were accepted by said John Thrash and his wife upon these terms; that the said John Thrash often spoke of said negroes, to different persons, as belonging to his wife and not to him, and that he wanted to sell them if practicable, but complained that the negroes were given in such a way as to allow him no control over them; that these declarations were made whilst Thrash was in possession of the negroes; that the negro boy, Sam, was worth from eleven to thirteen hundred dollars, and worth for hire, from 1840 to 1850, an average of seventy-five dollars per annum, and since 1850, an average of one hundred and twenty-five dollars per annum; that John Thrash sold said negro, Sam, to Thomas Hardy, and the defendant had been in possession of

the negro for about five years, claiming him as his own, and exercising the usual acts of ownership of masters over their slaves.

The fifth and sixth items of the will of Peter Strozier (which was read in evidence), are in the following words, to wit:

"Fifthly—I give and bequeath to my son-in-law, John Thrash, the sum of five dollars, and no more, of my estate, both real and personal, for his full share.

"Sixthly—I will that my beloved daughter, Mary B. Strozier, now Mary B. Thrash, that she shall keep the negroes. she has now in possession, for her only use, and for the use of the lawful heirs of her body, during life."

The evidence also showed that the testator, Peter Strozier, died in 1840, leaving his will in force, which was proven and executed according to its provisions.

During the progress of the trial the defendant proposed to prove "the value of the negro in dispute, for and during the lifetime of the plaintiff;" which testimony was objected to by counsel for plaintiff, on the ground that the measure of damages was the value of the property, with hire, and that the plaintiff was entitled to recover the corpus of the property.

The objection was overruled and the testimony admitted, to which the plaintiff excepted.

Upon this state of facts, the presiding Judge passed the following order in said case, to wit:

"On motion, and after argument had, it is ordered by the Court that a nonsuit be granted, on the grounds that the bequest to Mary B. Thrash does not create in her a separate estate, because the words are not sufficient to create a separate estate, to the exclusion of marital rights; and because the lawful heirs of her body (children) take a use with the mother, which excludes the conclusion that the wife was the separate object of the testator's bequest. Ordered, that plaintiff pay the cost, the Court being of the opinion that if she takes at all, she takes jointly with the children."

These decisions constitute the errors complained of in this case.

E. Y. HILL & SON, M. H. HILL, B. H. BIGHAM, for the plaintiff in error.

B. H. HILL, for the defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

There is one question in this case that has not been made or argued, and it is too important for us to pass upon until it is both made and argued, and that is, conceding that the interest which Mrs. Thrash, the plaintiff, did take under the 6th item of her father's will, was for her separate use, and to the exclusion of her husband, what was that interest? Was it a life estate in the negroes—the whole title, or a joint interest with her children? This is a very important inquiry, and a very necessary one, for a proper settlement of this case.

The 5th and 6th items are: "5th. I give and bequeath unto my son-in-law, John Thrash, the sum of five dollars, and *no more,* of my estate, both real and personal, for his full share.

"6th. I will that my beloved daughter, Mary B. Strozier, now Mary B. Thrash, that she shall keep the negroes she has now in possession *for her only use,* and for the use of the lawful heirs of her body, during life."

Now, whether Mrs. Thrash took a life estate in these negroes for life, with remainder to the heirs of her body, and consequently the whole title, or whether she took an interest in the negroes in common, or jointly with her children, she did certainly take some interest—whether to be enjoyed as a whole or jointly with others—the terms of the will vested that interest to her separate use, and to the exclusion of the husband. It is to her *only use.* How much stronger could the terms, "to her sole and separate use," have been? How the more restrictive? We can not see. But the will goes farther, and gives specially to the husband five dollars, and declares that he shall have *no more* of the estate, both real and personal. Now, if he takes the wife's share of the estate under the will, the express provision of the will is defeated. The estate given to her, then, being to her separate use and to the exclusion of her husband, she was entitled to recover from the defendant in this action, to the extent only of that interest, whether great or small—and the nonsuit ought not to have been granted.

## JUDGMENT.

Whereupon, it is considered and adjuged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in awarding a nonsuit.